Gendler v Guendler (2019 NY Slip Op 05389)





Gendler v Guendler


2019 NY Slip Op 05389


Decided on July 3, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 3, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
BETSY BARROS, JJ.


2017-08692
 (Index No. 11055/14)

[*1]Natalya Gendler, etc., respondent, 
v
Semen Guendler, appellant.


Sinayskaya Yuniver, P.C., Brooklyn, NY (Steven R. Yuniver of counsel), for appellant.
Galina Feldman, P.C., Brooklyn, NY (Philip Gurevich of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to partition real property, the defendant appeals from a judgment of the Supreme Court, Nassau County (Jack L. Libert, J.), dated June 8, 2017. The judgment, insofar as appealed from, after a nonjury trial, is in favor of the plaintiff and against the defendant in the total sum of $211,217.67.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
The plaintiff and the defendant were married in June 1997. The parties purchased a home in Valley Stream (hereinafter the home) in September 1997. The defendant filed for a divorce in Russia in November 2012 and was awarded a divorce in December 2012. The parties lived together in the home until January or February 2013. When the plaintiff returned from a trip to Russia in January or February 2013, she found that the locks at the home had been changed.
In November 2014, the plaintiff commenced this action, inter alia, to partition the home. The complaint alleged that the defendant was in possession of the home and that he had refused to (1) allow the plaintiff access to the home, (2) return the plaintiff's belongings that are in the home, and (3) give the plaintiff an equitable share of the value of the home. The action proceeded to a nonjury trial, at which the parties were the only witnesses. The parties agreed that the defendant would purchase the plaintiff's interest in the home, with the purchase price to be determined by an appraisal. Accordingly, the only issue to be determined at the trial was the distribution of the funds.
After the nonjury trial, the Supreme Court directed the defendant to pay the plaintiff $163,250, which represented her 50% interest in the home minus half of the principal balance due on two home equity lines of credit. The court further directed the defendant to pay the plaintiff $47,967.67 in consideration of his exclusive use and occupancy of the home beginning on February 1, 2013.
We agree with the Supreme Court's determination to direct the defendant to pay the plaintiff $47,967.67 in consideration of his exclusive use and occupancy of the home, as the plaintiff presented evidence that the defendant ousted her from the home (see Myers v Bartholomew, 91 [*2]NY2d 630, 633; McIntosh v McIntosh, 58 AD3d 814). The plaintiff testified that the locks to the house and garage were changed and that a lock had been placed on the mailbox in January or February 2013. The plaintiff further testified that the defendant would not allow her access to the home. When she reported the situation to law enforcement, she was told that she would need to get a court order to access the home. The defendant admitted that his son changed the locks to the home and garage, but denied ever telling the plaintiff that she could not have access to the home. However, the defendant's attorney conceded that there was no dispute that the plaintiff did not have access to the home since January 2013.
The defendant argues that the Supreme Court should have credited him $100,000 in light of his prior payments to the plaintiff in exchange for her share of the value of the home. The defendant testified that he and the plaintiff entered into a verbal agreement wherein the plaintiff agreed to transfer her share of the home to him in exchange for $140,000. The defendant offered into evidence two checks payable from him to the plaintiff in the sum of $50,000 each, dated May 2, 2011, and May 10, 2011, respectively. The court rejected the defendant's claim as barred by the statute of frauds.
"The statute of frauds prohibits the conveyance of real property without a written contract" (Pinkava v Yurkiw, 64 AD3d 690, 692; see General Obligations Law § 5-703[1]). "While the statute of frauds empowers courts of equity to compel specific performance of agreements in cases of part performance, the claimed partial performance must be unequivocally referable to the agreement" (Pinkava v Yurkiw, 64 AD3d at 692 [citation and internal quotation marks omitted]; see General Obligations Law § 5-703[4]; Alayoff v Alayoff, 112 AD3d 564, 566). "It is insufficient that the oral agreement gives significance to plaintiff's actions. Rather, the actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement" (Alayoff v Alayoff, 112 AD3d at 566 [citations and internal quotation marks omitted]; see Anostario v Vicinanzo, 59 NY2d 662, 664).
We agree with the Supreme Court's determination that the defendant's claim is barred by the statute of frauds, as there was no written contract between the parties (see General Obligations Law § 5-703[1]; Pinkava v Yurkiw, 64 AD3d at 692). Contrary to the defendant's contention, the doctrine of part performance is inapplicable here. Although the defendant presented evidence that he gave the plaintiff $100,000 in May 2011, prior to their divorce, these actions are not unintelligible or extraordinary without reference to the alleged agreement (see Anostario v Vicinanzo, 59 NY2d at 664; Alayoff v Alayoff, 112 AD3d at 566).
The defendant's remaining contentions are without merit.
BALKIN, J.P., COHEN, MILLER and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court